CHRISTOPHER JACKMAN, *ET AL.*, PLAINTIFFS-APPELLANTS, v. JOHN M. BODINE, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued March 31, 1965—Decided March 31, 1965.

*Mr. Vincent P. Biunno* argued the cause for defendant-respondent President of the Senate (*Mr. William M. Lanning* and *Mr. H. Arthur Smith, Jr.,* of counsel).

*Mr. Sidney P. McCord, Jr.* argued the cause for defendant-respondent Speaker of the General Assembly.

*Mr. Arthur J. Sills,* Attorney General of New Jersey, argued the cause for respondent Secretary of State (*Mr. Alan B. Handler,* First Assistant Attorney General, of counsel and on the brief).

*Mr. David Friedland* argued the cause for plaintiffs-appellants (*Messrs. Friedland, Schneider & Friedland,* attorneys).

*Mr. John T. Madden* argued the cause for defendant-respondent County Clerk of Sussex County (*Messrs. Dolan & Dolan,* attorneys).

*Mr. Dickinson R. Debevoise* argued the cause for The New Jersey Committee for Fair Representation, *amicus curiae.*

PER CURIAM. In the prior opinion in this cause, *Jackman v. Bodine,* 43 *N. J.* 453 (1964), we found that the Legislature of our State is not apportioned in accordance with the requirements of the equal protection clause of the Fourteenth Amendment to the *Constitution of the United States.* We concluded in part that another election could not be held under the existing legislative article of the *New Jersey Constitution.* This conclusion we found to be required by the views expressed in *Reynolds v. Sims,* 377 *U. S.* 533, at *p.* 585; 84 *S. Ct.* 1362, at *p.* 1393; 12 *L. Ed. 2d* 506, at *p.* 541 (1964) :

"\* \* \* It is enough to say now that, once a State's legislative apportionment scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan. However, under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment

scheme was found invalid. In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree. * * *"

In the light of that expression we were compelled to conclude that the election to be held in November 1965 was sufficiently distant to permit the formulation of plans for an election of a Legislature in harmony with the requirements of the equal protection clause. We further held that as a matter of necessity the Legislature could by statute enact a temporary plan for that election leaving the formulation of a permanent plan to others. We left open the question whether the permanent plan must be adopted by a Constitutional Convention or whether it could be accomplished through the amendatory process upon the initiative of a properly apportioned Legislature to be elected in 1965. We went on to say that the present Legislature, although not properly constituted, could initiate the constitutional process utilizing a plan of election to the convention which would fully comport with the rule of "one person, one vote."

■ The President of the Senate now applies to us for modification of the judgment to the end that a further election may be held this November under the present State Constitution and in connection therewith advises us of plans, still tentative, for the calling of a Constitutional Convention. We have examined the application carefully and considered the argument advanced in support of it and we cannot find any circumstance which would justify the failure to elect a properly apportioned Legislature at the November 1965 election. *Reynolds v. Sims* makes plain that it would be "the unusual case" in which such further delay could be justified. As the Court there said in amplification of its concept of "the unusual case," the critical fact warranting a delay would be in-

sufficiency of time to provide a constitutional plan in advance of the next scheduled general election. Obviously there is no such difficulty in the present case.

We add that we do not think the proposal to call a Constitutional Convention constitutes a sufficient circumstance within the meaning of *Reynolds v. Sims*. For one thing we have no way of knowing whether a convention will result in a proposal which will be self-operative as distinct from one requiring implementing legislation. If further legislation should be required then the State would be confronted by the same problem which it now has of attempting to achieve a detailed plan through the action of a malapportioned Legislature. In any event, as we have said, the call of a convention is not a fact which would relieve us from our obligation to abide by the mandate of the highest court in the land. Hence the application of the President of the Senate must be denied.

We directed argument on two further questions, namely, (2) whether we should at this time undertake to direct the specific basis for the November 1965 election and, if so, (3) what temporary plan we should establish. We are satisfied that we ought not to take any action at this point. As we said in our earlier opinion the temporary problem is basically one for statutory remedy. The primary responsibility and opportunity rest with the Legislature and the Governor in the exercise of their respective roles relating to the enactment of legislation. We cannot find in the moving papers satisfactory evidence that both the Senate and General Assembly have determined that they are unable to resolve this demand upon them. Until a resolution to that effect is adopted by both Houses we should leave the Legislature free to deal with the matter subject, however, to a time limitation necessary to insure orderly preparations for the election in November 1965.

Accordingly, we need not consider what temporary plan the Court should adopt unless (1) both Houses resolve they are unable to adopt a temporary plan, or (2) a statute embodying a temporary plan shall not have been enacted by Thursday,

June 3, 1965. The argument with respect to the third question mentioned above is therefore continued until Thursday, June 3, 1965 at 10:00 A. M. unless the Court shall direct an earlier date for argument. The application made by plaintiffs for the adoption by the Court of a specific plan suggested by them relates to this third question and hence that application is also continued.

In the light of the argument before us today, we add for the guidance of the Legislature that we would deem the Assembly as now constituted to be properly apportioned for the purpose of a temporary plan. We of course intimate no view with respect to its sufficiency as part of a permanent plan.

In our earlier opinion we said that if the present Legislature did not call for a Constitutional Convention by April 1, 1965, we would hear further argument as to whether a permanent plan may be supplied by amendment initiated by a properly apportioned Legislature. In view of the current legislative effort to provide for a Constitutional Convention we ought not to schedule such further argument at this time.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*For reversal*—None.